7 F.3d 235
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence A. CALLOWAY, Defendant-Appellant.
 No. 92-4272.
 United States Court of Appeals, Sixth Circuit.
 Sept. 30, 1993.
 
 Before: GUY and NELSON, Circuit Judges; and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Lawrence A. Calloway, appeals his conviction for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and his sentence enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Calloway raises five issues for our consideration: (1) does the Armed Career Criminal Act violate the Eighth Amendment; (2) do the sentence enhancement provisions of the Armed Career Criminal Act violate the Ex Post Facto Clause of the Constitution as applied to Calloway because two of his convictions occurred more than 18 years before the instant offense; (3) were two of Calloway's prior convictions part of a common scheme or plan and therefore merged into a single offense; (4) did the trial court err in finding that Calloway's prior convictions were valid; and (5) was Calloway denied the effective assistance of counsel. We affirm.
 
 I.
 
 2
 In April of 1992, Calloway was observed at a Medina, Ohio, gun show by members of the Medina County Sheriff's Department and the Medina County Drug Task Force. An officer surveilling Calloway heard him inquire about purchasing a gun without completing the required paper work. The dealer assured Calloway that no paperwork was necessary. Calloway then purchased the gun and brought it to his car. All of this was observed by surveillance officers, who then ran a criminal history check on Calloway and found that he had a prior felony conviction. When Calloway and others left the show, the vehicle in which he was driving was stopped. Officers found the gun that Calloway had purchased along with other guns and ammunition.
 
 
 3
 After Calloway was indicted, he was notified by the government of his potential status as an armed career criminal, subjecting him to the penalty enhancement provisions of 18 U.S.C. § 924(e)(1). The three prior violent felony convictions identified in the government's notice to Calloway were: (1) an armed robbery committed on or about November 26, 1973, with a conviction date of April 1, 1974; (2) an armed robbery committed on or about November 29, 1973, with a conviction date of April 1, 1974; and (3) an aggravated robbery, with a conviction date of January 14, 1980.
 
 
 4
 After a jury trial, Calloway was found guilty. Following the preparation of a presentence report, the district court conducted a sentencing hearing and found the defendant to be subject to the enhancement provisions of the Armed Career Criminal Act. The court sentenced Calloway to a term of imprisonment of 180 months, representing the 15-year mandatory minimum sentence imposed by the statute. This appeal followed.
 
 II.
 A.
 
 5
 Calloway first urges that the Eighth Amendment's prohibition against cruel and unusual punishment is implicated in this case by the 15-year sentence that he received. Calloway characterizes the crime charged in this case as not involving an active risk of danger to others. Therefore, relying on the proportionality test enunciated by the Supreme Court in Solem v. Helm, 463 U.S. 277 (1983), Calloway maintains that a 15-year minimum mandatory sentence is unconstitutionally harsh given the circumstances of his case. The circumstances to which Calloway refers include the fact that his previous convictions used for enhancement were as many as 18 years prior to his current crime, and in the meantime Calloway had completely reformed his life.
 
 In Solem, the Court held that
 
 6
 a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.
 
 
 7
 Id. at 292.
 
 
 8
 Recently, the Court revised the proportionality test of Solem, and, in a plurality opinion, held that
 
 
 9
 the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.
 
 
 10
 Harmelin v. Michigan, --- U.S. ----, ----, 111 S.Ct. 2680, 2705 (1991).
 
 
 11
 In light of Harmelin, where the Court determined that a mandatory life sentence without parole for a first offense of possessing with intent to distribute 672 grams of cocaine passed constitutional muster, we are unable to conclude that Calloway's sentence is grossly disproportionate to the conduct for which he was sentenced. Moreover, this court has, on several occasions, held that sentences under the Armed Career Criminal Act are not cruel and unusual. See United States v. Warren, 973 F.2d 1304, 1311 (6th Cir.1992); United States v. Pedigo, 879 F.2d 1315, 1320 (6th Cir.1989). We are bound by those decisions. See Meeks v. Illinois Central Gulf Railroad, 738 F.2d 748, 751 (6th Cir.1984). Therefore, we reject Calloway's argument that his sentence violates the Eighth Amendment.
 
 B.
 
 12
 In another challenge to the Armed Career Criminal Act, Calloway alleges that an ex post facto violation exists in the enhancement of his sentence because the predicate 1973 armed robbery convictions used for enhancement occurred more than 15 years ago, prior to the effective date of the Act. Apart from his ex post facto claim, Calloway laments the use of "ancient" convictions to enhance his sentence. Our previous decisions foreclose consideration of either of these arguments.
 
 
 13
 The Ex Post Facto Clause of the United States Constitution "forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (citations omitted). Section 924(e) of the Armed Career Criminal Act was enacted in 1984, ten years after Calloway's armed robbery convictions and four years after he was convicted of aggravated robbery.
 
 
 14
 In considering an ex post facto challenge to an enhancement under the sentencing guidelines, we noted that such a rule was justified "as are repeat offender laws, because the heavier penalty for the offense is not an additional punishment for the earlier behavior but is a statutorily authorized punishment for criminal conduct that has occurred after the passage of the law." United States v. Ykema, 887 F.2d 697, 700 (6th Cir.1989), cert. denied, 493 U.S. 1062 (1990); see also United States v. Ilacqua, 562 F.2d 399, 404 (6th Cir.1977) (an increase in sentence for a repeat offense does not violate the Ex Post Facto Clause simply because the first offense was committed before the passage of the repeat offender law) (citing Gryger v. Burke, 334 U.S. 728 (1948)), cert. denied, 435 U.S. 906 (1978). Thus, augmenting Calloway's punishment for a later offense, based on acts he committed before passage of the Armed Career Criminal Act, does not violate the Constitution.
 
 
 15
 Calloway's criticism of the use of "ancient" convictions for sentencing purposes also lacks merit. Section 924(e) imposes no limit on the age of a conviction that can be used for enhancement purposes, in contrast to the 15-year limitation on the use of prior convictions under the sentencing guidelines. See U.S.S.G. § 4A1.2(e). Faced with a very similar argument previously, we ruled that the sentencing guidelines' restriction on the use of prior convictions over 15 years old is irrelevant to a sentencing enhancement under § 924(e). See United States v. Moreno, 933 F.2d 362, 373 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 265 (1991). Thus, trial courts are required to enhance a defendant's sentence under the Act even when "ancient" convictions are the predicate. See United States v. Blankenship, 923 F.2d 1110 (5th Cir.) (section 924(e) permits sentence enhancement based on previous felony burglary convictions that were at least 25 years old), cert. denied, --- U.S. ----, 111 S.Ct. 2262 (1991); United States v. Preston, 910 F.2d 81 (3d Cir.1990) (the Act places no restriction on how recent prior convictions for violent felonies must be in order to be considered for sentence enhancement, thereby allowing court to base enhancement on previous conviction that was at least 17 years old), cert. denied, 498 U.S. 1103 (1991).
 
 C.
 
 16
 Next, Calloway contends that the district court erred in not finding that his two 1974 convictions were part of a common scheme or plan. Calloway seeks to merge the two convictions into a single offense. If successful, § 924's requirement that a defendant must have three prior felony convictions for an enhancement to apply would not be met. Calloway's two 1974 convictions resulted from events that happened three days apart. On November 26, 1973, Calloway robbed a record store. Three days later, he robbed a shoe store. The cases were consolidated for trial, and he was convicted of both crimes on April 1, 1974.
 
 
 17
 Under § 924(e)(1), the test for separate offenses is whether they were "committed on occasions different from one another...." Thus, it is immaterial that the offenses were consolidated. Moreover, we have held recently that two robberies committed 30 minutes apart qualified as two predicate offenses for purposes of § 924(e). United States v. Brady, 988 F.2d 664 (6th Cir.1993) (en banc), petition for cert. filed, --- U.S.L.W. ---- (June 21, 1993); see also United States v. Taylor, 882 F.2d 1018, 1029 (6th Cir.1989) (burglaries of different structures on different dates were "committed on occasions different from one another" and were therefore properly counted as predicate convictions for purposes of the Armed Career Criminal Act), cert. denied, 496 U.S. 907 (1990). Although Calloway's criminal activity in November 1973 might have been part of a "crime spree," he committed his crimes on different dates in different places. Therefore, the district court was justified in considering the convictions separately.
 
 D.
 
 18
 In his final challenge to his sentencing, Calloway raises a collateral attack to the voluntariness of two of his prior convictions used for enhancement. Calloway maintains that he did not voluntarily and intelligently waive his constitutional rights when convicted of two felonies in 1974 as required by Boykin v. Alabama, 395 U.S. 238 (1969), and he testified at the sentencing hearing that he was not advised of his right not to testify or his right to cross-examine witnesses. The government was unable to produce transcripts of Calloway's 1974 plea hearing, but it did submit the journal entries of the plea hearings. The entries stated that Calloway was "fully advised of his Constitutional rights" and that his pleas were "voluntarily made, and with a full understanding of the consequences." (App. at 8-9). Further, the government called Charles Kirkwood, the prosecutor in Calloway's two 1974 cases, to testify as to the habit and custom of the Ohio county court in which Calloway was convicted. Kirkwood stated that in every case he was involved in, Judge Price--the presiding judge at Calloway's plea hearing--and the other judges in the county complied with constitutional requirements. The district court considered Calloway's claims and found the convictions valid.[1]
 
 
 19
 We have held previously that the government has the initial burden of proving that a defendant's prior felony convictions did not result from a violation of any of his Boykin rights. Warren, 973 F.2d at 1309-10. The government can meet its burden by producing documentary evidence that a defendant properly waived his rights. Id. at 1310; see also Taylor, 882 F.2d at 1031 (in the absence of a transcript, government's introduction of record certifying valid convictions is sufficient to shift burden to defendant). It did that in this case, and the government also produced evidence of the custom and habit of the trial judge who heard Calloway's plea. Thus, the government clearly met its burden. Indeed, although we do not reach the question, we note that producing evidence of the custom and habit of the trial court might alone be sufficient for purposes of shifting the burden to the defendant. See United States v. Gallman, 907 F.2d 639, 644 (6th Cir.1990) ("As long as [defendant's] intelligent awareness can be reasonably inferred from the transcript or the custom and practice of the court, the guilty plea ... passes muster.") (emphasis added), cert. denied, --- U.S. ----, 111 S.Ct. 1110 (1991); United States v. Dickens, 879 F.2d 410, 411-12 (8th Cir.1989) ("When a prior conviction is a number of years old and there is no transcript of the taking of the plea, 'evidence of the trial court's practice is precisely the evidence which the government will have at its disposal.' We previously have recognized the validity of relying on evidence of the custom and practice of trial attorneys and judges to refute allegations of procedural infirmities.") (citation omitted).
 
 
 20
 When the government has met its burden of proving that Calloway's 1974 convictions were valid, the burden shifts to him to prove "that his convictions were in fact not constitutionally sound." Taylor, 882 F.2d at 1031. Calloway introduced only his own testimony, which the court considered. Thus, no error existed here, for the court was within its discretion to reject Calloway's testimony in light of the evidence offered by the government. Defendant did not contest the third predicate offense for aggravated robbery. Coupled with his two prior convictions for armed robbery in 1974, Calloway had three prior convictions and therefore qualified for sentence enhancement under § 924(e).
 
 III.
 
 21
 Calloway alleges that he was denied effective assistance of counsel. Calloway did not make this claim to the trial court. As a general rule, we will not review an ineffective assistance of counsel claim raised for the first time on appeal. United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). Defendant may properly raise this issue in a motion to the district court pursuant to 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue. United States v. Frazier, 936 F.2d 262, 267 (6th Cir.1991). Only when the record is adequate to assess the merits of the defendant's allegations will we consider an ineffective assistance of counsel claim on direct appeal of a criminal conviction. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). The appellate record is not sufficiently developed for us to forego our usual practice in this instance. Further, the district court is best situated to make the necessary factual findings and conclusions in the first instance, and these determinations may require testimony from Calloway's attorney regarding trial strategy.[2] United States v. Straughter, 950 F.2d 1223, 1234 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1505 (1992). We will therefore not review Calloway's ineffective assistance of counsel claim.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Joseph M. Hood, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 In a related case, this court recently held en banc that federal courts have limited discretion under the sentencing guidelines to hear collateral attacks on prior convictions. See United States v. McGlocklin, No. 91-6121 (6th Cir. Aug. 17, 1993) (en banc)
 
 
 [2]
 The trial court noted its displeasure toward imposition of a 15-year sentence on Calloway, for the court considered him rehabilitated insofar as his earlier felony convictions were concerned. The court stated:
 I guess sometimes, Mr. Calloway, we find ourselves in a situation where the sins of the past are written large on the slate of today. I presume in a sense that's the purpose of this statute, which in ever so many cases serves a very valid purpose.
 I was impressed with you since the first day you walked in here. Does seem to me that your life has changed. And in a different time and day judges like myself probably could look at your case in a different way. Because we would be able to see you as an individual as opposed to a number.
 By virtue of the mandates of the law the Court has very little choice in this cause. The law dictates that a minimum penalty be emplaced here. Even were the Court to find a dozen different reasons why the guidelines should be reduced in your case, there is a minimum mandatory sentence which is applicable absent circumstances which are not present here.
 The wisdom of Congress has also said to us that the Court cannot depart from those matters unless the Court finds certain facts to be true. And even then you must give consideration to the mandatory nature of the law itself.
 I would say to you quite honestly as one man to another I'm not at all convinced that any imprisonment in this case will further the system of justice, the system of society, or indeed your future life.
 All of us are pledged by our oath just as you are by yours to apply that law under which we work. For this reason the Court sentences you to the custody of the Bureau of Prisons for a period of 180 months, that being the mandatory minimum. The Court will order a term of supervised release upon your release of three years. The standard terms of release shall apply.
 (App. at 88-89). We agree with Judge Bell that the severely limited discretion afforded the trial judge under the Armed Career Criminal Act results in an extremely harsh sentence in this case.